UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CORNELIUS GREEN, 00-B-1916,

        Petitioner,

       -v-                            08-CV-0876(MAT)
                                             **ORDER**

JAMES CONWAY,

        Respondent.
_____

## I.   Introduction

*Pro se* petitioner Cornelius Green ("petitioner") has filed a timely petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction in Monroe County Court of Murder in the Second Degree (N.Y. Penal L. ("P.L.") § 125.25(3)), Attempted Murder in the Second Degree (P.L. §§ 110.00, 125.25(1)), Attempted Robbery in the First Degree (P.L. §§ 110.00, 160.15(1)), and two counts of Burglary in the First Degree (P.L. § 140.30(1),(2)), entered on August 30, 2000, following a jury trial before Judge Patricia D. Marks. Petitioner was sentenced as a second felony offender to an aggregate term of imprisonment of fifty years to life.

## II.  Factual Background and Procedural History

On November 7, 1995, Shalanda Lockett was watching television at her mother's house at 431 Hawley Street in Rochester, New York. when her uncle, Eric Lockett ("Lockett"),

ran in "screaming that he was shot." T. 170-72.[1] He appeared to be in shock, but was conscious and still able to speak. T. 172-74. Shalanda observed that her uncle was "running back and forth through the house" and his face was "full of blood . . . he had no face. He just had two pieces of skin hanging from his chin." T. 172-73. When Shalanda asked him what had happened, Lockett answered that "Cornelius shot him." T. 179. Shalanda knew who Cornelius was; he lived about five houses away at 448 Hawley Street. T. 180, 203.

Rochester Police Officer Laurie Robinson ("Robinson") arrived at 431 Hawley Street responding to a call reporting a person shot. There, she was led to a bedroom where she found Eric Lockett. "There was extensive damage to his whole mouth . . . I couldn't see any lips, any teeth. [He] was profusely bleeding." T. 195-97, 202. When the officer asked him what happened, he told her that he had been shot at a brown house and gestured east, consistent with the location of 397 Hawley Street. T. 198-99. Robinson asked Lockett who had shot him, and Lockett said "Cornelius." T. 201. She asked what Cornelius' last name was, and Lockett "indicated with a direction across the street." When Robinson asked if that's where Cornelius lived, Lockett nodded his head. T. 202.

---

[1] Citations to "T.__" refer to the trial transcript; citations to "S.__" refer to the sentencing transcript.

Eric Lockett was treated for his injuries at Strong Memorial Hospital in Rochester. The surgeon attending to him found "jagged lacerations to the lower portion of his face involving the lips and upper lip," with "swelling of his tongue and the soft tissue and the mandible, the jaw was unstable, there was a fracture." T. 247. A CAT scan revealed that fragments of metal were in the soft tissues around Lockett's face. T. 248.

Shortly after the police call went out for 431 Hawley Street, Rochester Police responded to a call for a person shot at 397 Hawley. T. 196. There, the responding officer found a woman, subsequently identified as Elizabeth Conner ("Conner"), lying motionless and bloody on the kitchen floor. T. 162-63, 168. The apartment was in disarray, with broken pieces of furniture and blood spatters. T. 168. A police investigator discovered a bullet fragment that had gone through the refrigerator door, and various items of drug paraphernalia were also found in the residence. T. 215, 217-18.

Conner was pronounced dead on November 20, 1995, with the cause of death determined as a shotgun wound to the head. T. 299, 306. An autopsy revealed an injury to the head and "tiny pellets consistent with shotgun pellets in the scalp." T. 299. Conner also had an injury to her right hand that was consistent with a "defensive-type wound." T. 302.

Petitioner was arrested nearly five years later in January, 2000, following an investigation by the Rochester Police

Department. He was apprehended at a rural address in Greenville, Florida, and was taken to the Madison County Sheriff's Department for questioning. T. 224-25, 310-11. There, Rochester Police Investigator Anthony Capione ("Inv. Campione") read petitioner his <u>Miranda</u> warnings, and petitioner agreed to waive his rights and speak with the investigators. T. 226-31, 311-12. Initially, petitioner denied his involvement and denied being in Rochester at the time of Conner's murder. T. 232, 312. As the investigators confronted him with evidence to the contrary, petitioner agreed to tell them what had happened, but refused to put anything in writing. According to Inv. Campione, petitioner told him that "he [petitioner] knows that if he told me anything it would only be hearsay and that I couldn't use it against him in court." T. 273.

Petitioner then proceeded to confess that he, Eric Lockett, and another man known as "B" planned to rob a crack house at 397 Hawley Street. T. 234, 313. They arranged to send Lockett into the house because he "knew the people there that were using drugs." If there were no drugs or money inside, Lockett would come out after a short time. If he stayed inside, however, that would indicate that there were money or drugs, and petitioner and B would go in to rob the house. T. 235, 313. Lockett entered the house and did not come out right away, so petitioner and B, both armed, went to the door and knocked. Petitioner had his shotgun pointed at the door. T. 235-36, 313-14. A woman answered the door, saw the two men, and started screaming. According to

petitioner, she grabbed the barrel of the shotgun, which "just went off," and that he did not even pull the trigger. T. 236, 267, 314. She was struck in the head, and, when she fell to the floor, petitioner "knew she was dead at that time." <u>Id.</u> Petitioner and B then continued into the house, where petitioner re-loaded the shotgun and shot Lockett once in the face, because "Eric Lockett was the only person that could identify him." T. 236-37, 314. Panicking, petitioner ran outside and jumped a fence, later meeting back up with B. According to petitioner, B disposed of the weapons–petitioner's shotgun and B's handgun. T. 237-38, 314-15. As petitioner walked back towards his mother's house on Hawley Street, he saw police officers near the home and decided not to return. Shortly thereafter, petitioner left for Greenville, Florida, where he had relatives. T. 238.

No one who was inside the Hawley Street drug house testified at petitioner's trial[2], and the defense called no witnesses. The jury ultimately found petitioner guilty of second-degree murder (felony murder), second-degree attempted murder, first-degree attempted robbery, and two counts of first-degree burglary. T. 394-95. Petitioner was then sentenced as a second felony offender to various terms of imprisonment totaling fifty years to life. S. 19-20.

---

[2] Eric Lockett was subpoenaed by the prosecution but did not appear at trial. A stipulation was read to the jury that Lockett had been served with a subpoena and that a material witness order had been issued. T. 322, 328.

Petitioner appealed his conviction to the Appellate Division, Fourth Department, seeking reversal on the following grounds: (1) the trial court failed to instruct the jury on corroboration; (2) petitioner's right to confront witnesses was violated; (3) prosecutorial misconduct on summation; (4) improperly admitted hearsay evidence; (5) the evidence at trial was legally insufficient and the verdict was against the weight of the evidence; (6) the admission of cumulative testimony was prejudicial; and (7) ineffective assistance of trial counsel. See Respondent's Appendix ("Appx.") A. The Fourth Department unanimously affirmed the judgment of conviction. People v. Green, 43 A.D.3d 1279 (4th Dept. 2007), lv. denied, 9 N.Y.3d 1034 (2008).

On October 9, 2006, prior to perfecting his appeal to the Appellate Division, petitioner moved pro se in Monroe County Court to vacate his conviction pursuant to N.Y. Crim. Proc. L.("C.P.L.") § 440.10 on the ground that his right to confrontation was violated. See Appx. H. That motion was denied without a hearing on October 31, 2006. Appx. K.

Petitioner filed the instant petition for habeas corpus ("Pet.") on December 1, 2008, alleging the following five grounds for relief: (1) petitioner was denied his right to confront witnesses against him, in violation of Crawford v. Washington, 541 U.S. 36 (2004); (2) the prosecutor engaged in misconduct on summation by suggesting that petitioner was at fault for the

failure of a witness to testify; (3) petitioner was denied due process when the court allowed the excited utterance of Eric Lockett identifying petitioner as the shooter; (4) the verdict was against the weight of the evidence and the evidence was insufficient to support the conviction; and (5) petitioner was denied the effective assistance of counsel. Pet. ¶ 12 (Grounds One-Five).

For the reasons that follow, I find that petitioner is not entitled to the writ, and the petition is dismissed.

## III. Discussion

### A. General Principles Applicable to Federal Habeas Review

#### 1. Standard of Review

To prevail under 28 U.S.C. § 2254, as amended in 1996, a petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of his federal constitutional claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established Supreme Court precedent, or resulted in a decision that was based on an unreasonable factual determination in light of the evidence presented in state court. See 28 U.S.C. § 2254(d)(1), (2); Williams v. Taylor, 529 U.S. 362, 375-76 (2000).

#### 2. Adequate and Independent State Ground Doctrine

It is a well-settled aspect of federal habeas jurisprudence that if "a state prisoner has defaulted his federal claims in

state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred" absent (1) a showing of cause for the default and actual prejudice attributable thereto, or (2) a showing that failure to consider the claims will result in a "fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). A state ground will create procedural default sufficient to bar habeas review if the state ground first was an "independent" basis for the decision; this means that "the last state court rendering a judgment in the case clearly and expressly state[d] that its judgment rests on a state procedural bar." In addition, the state procedural bar must be "adequate" to support the judgment-that is, it must be based on a rule that is "'firmly established and regularly followed' by the state in question." Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (quoting Ford v. Georgia, 498 U.S. 411, 423-24 (1991)).

If a state court holding contains a plain statement that a claim is procedurally barred then the federal habeas court may not review it, even if the state court also rejected the claim on the merits in the alternative. See Harris v. Reed, 489 U.S. 255, 264 n.10 (1989) ("a state court need not fear reaching the merits of a federal claim in an alternative holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision).

**B.    Merits of the Petition**

**1.    Confrontation Clause Violation**

Petitioner contends that his right to confront witnesses against him was violated when his accomplice, Eric Lockett, did not testify at trial. Pet. ¶ 12 (Ground One). Petitioner raised this claim to the Appellate Division, which held that petitioner "failed to preserve for our review his contention" that the testimony of Officer Robinson and Shalanda Lockett violated his constitutional right of confrontation. Green, 43 A.D.3d at 1280 (citing C.P.L. § 470.05(2)). The appellate court went on to state that, in the alternative, the statements made to the police officer did not constitute testimony within the meaning of the Confrontation Clause, and, furthermore, any error in the admission of the niece's testimony was harmless beyond a reasonable doubt. Id. at 1280-1281.

The Appellate Division explicitly relied on New York's "contemporaneous objection rule" to reject petitioner's claim as unpreserved. Codified at C.P.L. § 470.05(2), the contemporaneous objection rule requires that an objection to an error be made "at the time of such ruling or instruction or at any subsequent time when the court ha[s] an opportunity of effectively changing the same." § 470.05(2). The Second Circuit has determined that C.P.L. § 470.05(2) is an independent and adequate state procedural ground. See Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990); see also Garcia v. Lewis, 188 F.3d 71, 79-82 (2d Cir. 1999);

accord, e.g., <u>Swail v. Hunt</u>, --- F.Supp.2d ----, 2010 WL 3965696, *4 (W.D.N.Y. 2010). The fact that the Appellate Division alternatively addressed petitioner's confrontation clause argument on the merits is of no moment. "'[F]ederal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim.'" <u>Green v. Travis</u>, 414 F.3d 288, 294 (2d Cir. 2005) (quoting <u>Glenn v. Bartlett</u>, 98 F.3d 721, 724 (2d Cir. 1996)). Accordingly, petitioner's claim is procedurally barred from being raised before this Court for habeas review.

The Court may reach the merits of petitioner's claim, despite the procedural default, if he can demonstrate cause for the default and prejudice, or that failure to consider the claim will result in a miscarriage of justice. <u>See</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991). A fundamental miscarriage of justice means a "constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986). Petitioner has not alleged cause for the procedural default and prejudice resulting therefrom, nor has he asserted that he is actually innocent of the crimes for which he has been convicted. Accordingly, this claim must be dismissed.

## 2. Prosecutorial Misconduct

Petitioner next avers that he was denied a fair trial when the prosecutor engaged in misconduct by suggesting that the petitioner was at fault for the failure of Eric Lockett to testify at petitioner's trial. Pet. ¶ 12 (Ground Two). The Fourth Department held that the claim was unpreserved for appellate review, citing People v. Dillon, 38 A.D.3d 1211 (4th Dept. 2007) (finding prosecutorial misconduct claim unpreserved and citing C.P.L. § 470.05(2)). Here, the appellate court again relied on the contemporaneous objection rule to reject petitioner's prosecutorial misconduct argument, see supra at III.B.1., and the claim is therefore subject to a procedural bar.

Petitioner has not attempted to make the factual showing of "actual innocence" required to qualify for the "fundamental miscarriage of justice" exception. While he does not specifically allege cause and prejudice to overcome the procedural bar, he does raise an independent claim of ineffective assistance of counsel based upon his attorney's failure to object to the prosecutor's summation. See Pet. ¶ 12 (Ground Five). Ineffective assistance of counsel may constitute cause for a petitioner's failure to pursue a constitutional claim, e.g., Edwards v. Carpenter, 529 U.S. 446 (2000), but in order to constitute cause, counsel's ineffectiveness must itself rise to the level of a constitutional violation. Id. (stating that "ineffective assistance adequate to establish cause for the procedural default

of some *other* constitutional claim is *itself* an independent constitutional claim" (emphasis in original)). Here, petitioner's underlying contention that his attorney was ineffective is without merit. <u>See infra</u> at III.B.4. Because petitioner cannot show that his trial attorney was constitutionally ineffective, he consequently does not establish "cause" to excuse the procedural default. <u>See</u> <u>Zayas v. Ercole</u>, 2009 WL 6338395, *12 (E.D.N.Y. Nov. 9, 2009)("Since petitioner's trial counsel's performance was, in the aggregate, reasonable . . . petitioner cannot establish cause for his failure to preserve the claim."). This claim, therefore, must be dismissed.

### 3. Admission of Hearsay Evidence

Petitioner argues that he was denied due process when the trial court erroneously admitted hearsay evidence identifying the petitioner under the "excited utterance" exception to the hearsay rule. Pet. ¶ 12 (Ground Three). The Appellate Division held that declarations of Eric Lockett that Cornelius shot him made to his niece and Officer Robinson "were admissible under the excited utterance exception to hearsay rule." <u>Green</u>, 43 A.D.3d at 1280.

On the outset, the Court observes that it generally is "not the province of a federal habeas court to reexamine state-court determinations on state-law questions," <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991), because "rulings by state trial courts on evidentiary issues, even if erroneous, do not rise to the level of a constitutional violation." <u>Copes v. Schriver</u>, No. 97 Civ.

2284(JGK), 1997 WL 659096, at *3 (S.D.N.Y. Oct.22, 1997); accord Taylor v. Curry, 708 F.2d 886, 891 (2d Cir. 1983). In order to prevail on habeas review, petitioner must show that the alleged evidentiary error arising out of the admission of the statements was "of constitutional dimension" and deprived him of "fundamental fairness." Rosario v. Kuhlman, 839 F.2d 918, 924 (2d Cir. 1988); see also Roldan v. Artuz, 78 F.Supp.2d 260, 267 (S.D.N.Y. 2000) (petitioner bears a "heavy burden" in showing that state evidentiary errors deprived him of his constitutional right to a fair trial). For an evidentiary error to rise to this level, it must have had a "'substantial and injurious effect or influence in determining the jury's verdict.'" Brecht v. Abrahamson, 507 U.S. 619, 623, 637 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). Stated somewhat differently, the evidence "must have been 'sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998) (quoting Johnson v. Ross, 955 F.2d 178, 181 (2d Cir. 1992)).

Petitioner cannot meet this heavy burden because the admission of the testimony was proper. The statements made to his niece and to Officer Robinson fit comfortably within the excited utterance exception to the rule against hearsay testimony. An "excited utterance" is made "contemporaneously or immediately after a startling event-which asserts the circumstances of that

occasion as observed by the declarant." <u>People v. Edwards</u>, 47 N.Y.2d 493, 497 (1979). Here, petitioner had run into his house, bleeding profusely within moments after he had been shot in the face. The New York Court of Appeals has held that statements made by a shooting victim during the automobile ride to the hospital were admissible as excited utterances. <u>People v. Brown</u>, 70 N.Y.2d 513, 520 (1987) ("Given the sudden and violent nature of the event, the mortal wounds inflicted, the extreme pain and the unrelenting physical and emotional trauma caused thereby, and given, additionally, the brief time between the shooting and the statements, there can be no question that [the declarant's] initial responses to his mother and his uncle made at the scene and on the way to the hospital were made while he was still under the influence of the excitement precipitated by an external startling event") (internal quotation omitted). Moreover, the declaration to Officer Robinson was not in narrative form, nor was it response to prompting, but rather was a response to a simple inquiry while Lockett was still under the influence of the startling event (i.e., the officer noted that Lockett was "upset" with a "tremor in his hands." T. 197.). <u>Cf.</u> <u>People v. Johnson,</u> 1 N.Y.3d 302, 308 (2003) (finding that testimony was improperly admitted as excited utterance where the challenged declaration was made to police in narrative form and in response to prompting am hour after the startling event, and the declarant had become more relaxed).

Accordingly, because the admission of the hearsay statements was not erroneous under state law, petitioner has failed to allege a constitutional violation. See Green v. Herbert, No. 01CIV.11881, 2002 WL 1587133, at *12 (S.D.N.Y. Jul.18, 2002) ("The first step in this analysis is to determine whether the state court decision violated a state evidentiary rule, because the proper application of a presumptively constitutional state evidentiary rule would not be unconstitutional.") (citing Brooks v. Artuz, 97 Civ. 3300, 2000 WL 1532918 at *6, 9 (S.D.N.Y. Oct.17, 2000) (petitioner did not demonstrate an error under state evidentiary law, "much less" an error of constitutional magnitude); Jones v. Stinson, 94 F.Supp.2d 370, 391-92 (E.D.N.Y.) (once the habeas court has found that the state court ruling was not erroneous under state law, there is no need to apply a constitutional analysis), rev'd on other grounds, 229 F.3d 112 (2d Cir. 2000)). This claim is therefore dismissed.

### 4. Weight and Sufficiency of the Evidence

Petitioner contends that the verdict was against the weight of the evidence and that the evidence was legally insufficient to support the conviction. Pet. ¶ 12 (Gound Four). The Appellate Division rejected both arguments on the merits. Green, 43 A.D.3d at 1281.

On the outset, challenges to the weight of the evidence supporting a conviction, unlike challenges to the sufficiency of the evidence, are not cognizable on federal habeas review. E.g.,

Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996). A claim that a verdict was against the weight of the evidence derives from C.P.L. § 470.15(5), which permits an appellate court in New York to reverse or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." C.P.L. § 470.15(5). Thus, the "weight of the evidence" argument is a pure state law claim grounded in the criminal procedure statute, whereas a legal sufficiency claim is based on federal due process principles. People v. Bleakley, 69 N.Y.2d 490, 495 (1987). Since a weight of the evidence claim is purely a matter of state law, it is not cognizable on habeas review. See U.S.C. § 2254(a); Estelle, 502 U.S. at 68 ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

In addition, petitioner's sufficiency of the evidence claim fails on the merits. A petitioner challenging the sufficiency of the evidence of his guilt in a habeas corpus proceeding "bears a very heavy burden." Fama v. Comm. of Corr. Services, 235 F.3d 804, 813 (2d Cir. 2000). Habeas corpus relief must be denied if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). This sufficiency-of-evidence "inquiry does not focus

on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." Herrera v. Collins, 506 U.S. 390, 402 (1993). Stated another way, the reviewing court must determine "whether the jury, drawing reasonable inferences from the evidence, may fairly and logically have concluded that the defendant was guilty beyond a reasonable doubt ... view[ing] the evidence in the light most favorable to the government, and constru[ing] all permissible inferences in its favor." United States v. Carson, 702 F.2d 351, 361 (2d Cir. 1983) (internal citations omitted), cert. denied sub nom. Mont v. United States, 462 U.S. 1108 (1983). A federal court reviewing an insufficiency-of-the-evidence claim must look to state law to determine the elements of the crime. Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999) (citation omitted), cert. denied, 528 U.S. 1170 (2000).

In New York, second-degree murder includes both intentional murder (P.L. § 125.25(1)) and felony murder, which is defined as "caus[ing] the death of a person" during the course of a felony, such as robbery or burglary. Id. § 125.25(3). Robbery in the first degree is defined as "caus[ing] serious physical injury" to a person while forcibly stealing property, id. § 160.15(1), and burglary in the first degree involves a person "knowingly enter[ing] or remain[ing] unlawfully in a dwelling with intent to commit a crime therein," while he is "armed with . . . a

deadly weapon . . . or [c]auses physical injury to any person who is not a participant in the crime." P.L. § 140.30(1)-(2). A person is guilty of an attempt to commit a crime "when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime." P.L. § 110.00.

Here, the proof of petitioner's guilt was overwhelming. Petitioner gave a full confession to investigators, explaining in detail how he planned the robbery, how he approached the house with a shotgun, how he shot and killed Conner when she opened the door, and how he entered the home and attempted to kill Eric Lockett to eliminate him as a witness to the murder. That confession was corroborated by the medical evidence establishing that Lockett and Conner both suffered shotgun wounds to the head, the nature of the crime scene, and the testimony of Shalanda Lockett and Officer Robinson that Eric Lockett had told both of them that petitioner shot him. A rational trier of fact could have easily found the elements of felony murder, attempted intentional murder, attempted robbery, and burglary, beyond a reasonable doubt. Thus, the Appellate Division's conclusion that legally sufficient evidence supported the conviction was neither contrary to, nor an unreasonable application of clearly established Supreme Court precedent.

### 5. Ineffective Assistance of Trial Counsel

Finally, petitioner contends that his trial counsel was constitutionally ineffective for failing to request a

corroboration charge and for failing to object to the prosecutor's summation. Pet. ¶ 12 (Ground Five). The Appellate Division held that "defense counsel represented his client diligently and vigorously." Green, 43 A.D.3d at 1282.

To establish that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel, a petitioner must show that (1) his attorney's performance was deficient, and that (2) this deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficiency is measured by an objective standard of reasonableness, and prejudice is demonstrated by a showing of a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." Id. To succeed, a petitioner challenging counsel's representation must overcome a "strong presumption that [his attorney's] conduct falls within the wide range of reasonable professional assistance." Id. at 689. A reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," id., and may not second-guess defense counsel's strategy. Id. at 690.

Petitioner claims that his attorney should have requested a corroboration instruction to be read to the jury with regard to petitioner's confession. Though the Appellate Division agreed

that the instruction should have been given, it held that "the record establishes that there is the requisite corroborative evidence that the crimes of which he was convicted were committed." Green, 12 A.D.3d at 1281. Even of the Court were to find that counsel's failure to request the jury instruction fell below an objective standard of reasonableness, there is no reasonable probability that the outcome would have been different had the jury instruction been given, as there was ample evidence of petitioner's guilt. See supra at III.B.4. Thus, viewing the "totality of the evidence before the judge or jury," the Court cannot find that counsel's failure to request the corroboration instruction was prejudicial under the terms of Strickland. 466 U.S. at 695-96.

With respect to petitioner's complaint that his attorney failed to object to the prosecutor's summation, he cannot demonstrate that his attorney's conduct was objectively unreasonable. Contrary to petitioner's assertion, the record indicates that the prosecutor's comment regarding Eric Lockett's failure to testify, ("As you have heard, I can't get Eric Lockett in this Courtroom"), falls short of asserting that petitioner was responsible for the witness' absence. T. 349. Indeed, Lockett's failure to appear could have been attributed to a number of reasons, including concerns of self-incrimination or relating to his known status as a drug-abuser. Because the remark was not objectionable, petitioner's attorney was under no obligation to

raise a meritless objection. <u>See</u> <u>Carvajal v. Artus</u>, 2008 WL 4555531, *35 (S.D.N.Y. Oct.10, 2008) (collecting cases that hold counsel cannot be ineffective for failing to make a meritless objection).

In sum, the state court's determination was not contrary to or an unreasonable application of <u>Strickland v. Washington</u>, and habeas relief is denied on this ground.

## IV. Conclusion

For the reasons stated above, Cornelius Green's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the action is dismissed. Because petitioner has failed to make a "substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. <u>See, e.g.</u>, <u>Lucidore v. New York State Div. of Parole</u>, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. <u>Coppedge v. United States</u>, 369 U.S. 438 (1962).

**SO ORDERED.**

S/Michael A. Telesca

_____
                    MICHAEL A. TELESCA
                    United States District Judge

Dated:     December 13, 2010
           Rochester, New York

-21-